Ogbozor Clement OZOANYA, Petitioner,

v.

Attorney General Janet RENO and U.S. Immigration and Naturalization Service, Respondents.

Civil Action No. 96–1985 (PLF).

United States District Court, District of Columbia.

June 25, 1997.

Robert E. Juceam, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, Kimberly Kolch, Catholic Legal Immigration Network, Inc., Oakdale, LA, for petitioner.

John M. Facciola, Office of the Asst. U.S. Atty., Washington, DC, for respondents.

## OPINION

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on petitioner's amended application for a writ of *habeas corpus* and request to stay deportation, respondents' motion to dismiss and petitioner's reply. Petitioner, a detainee at the U.S. Immigration and Naturalization Service's detention facility at Oakdale, Louisiana, is proceeding *in forma pauperis* in this matter. Petitioner challenges the constitutionality of a deportation order issued by the INS, the proceedings relating thereto and the lawfulness of his deportation. He requests a stay of his deportation and judicial review of his constitutional claims and of the deportation order itself.

Notified that the Attorney General intended to deport petitioner imminently, the Court held a status conference on March 6, 1997. Promptly thereafter the Court appointed Robert E. Juceam and Kimberly Kolch to represent petitioner in this case, set a briefing schedule and stayed petitioner's deportation pending the Court's determination of this matter. The Court directed counsel to brief the following questions:

1. Whether this Court has jurisdiction to entertain petitioner's application for a writ of *habeas corpus* because it was filed before enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996? Or whether only a court of appeals—in this case the United States Court of Appeals for the Fifth Circuit—has exclusive jurisdiction over matters relating to petitioner's deportation?

2. If jurisdiction were in the Fifth Circuit, would this Court have authority to enter a stay of petitioner's deportation while he appeals his deportation to that court?

3. Whether petitioner's time has expired to appeal his deportation order to the Fifth Circuit? If so, can petitioner still proceed in this Court?

4. What, if any, requirements exist to give notice of appeal rights to an alien who has been ordered deported? Should equitable tolling be considered if petitioner was not informed about his right to appeal?

5. Whether this Court or any court has authority to review deportation proceedings beyond claims of "substantial" constitutional violations?

## I. BACKGROUND

Petitioner is a citizen of Nigeria who entered the United States as a visitor in 1988, married a United States citizen in 1989 and became a lawful permanent resident of the United States in 1992. Respondents' Memorandum of Points and Authorities in Support of Motion to Dismiss the *Habeas* Petition and Deny the Request for a Stay of Deportation ("Resp. Mem."), Exh. A, Order to Show Cause. On April 29, 1994, petitioner was convicted, following a plea of guilty, of conspiracy to possess with intent to distribute heroin and sentenced to 36 months' imprisonment and four years of supervised release. Resp. Mem., Exh. C, Judgment and Commitment. Deportation proceedings were instituted while petitioner was serving his sentence in the criminal case. In early 1996,

petitioner was released from federal prison and transferred to the INS detention facility at Oakdale, Louisiana. Resp. Mem. at 5. Petitioner sought release on bond, but after a hearing on April 11, 1996, an immigration judge denied bond on May 1, 1996. Resp. Mem., Exh. D, Bond Decision of the Immigration Judge.[1]

On May 10, 1996, petitioner appeared before an immigration judge for a deportation hearing. Petitioner asserted his right to counsel and sought a continuance in order to retain counsel. Resp. Mem., Exh. B, Oral Decision of the Immigration Judge; Respondents' Reply to Petitioner's Memorandum of Law in Opposition to Respondents' Motion to Dismiss ("Resp. Repl."), Exh. A, Transcript of May 10, 1996 Hearing. Noting that four previous continuances had been granted for petitioner to retain counsel, the immigration judge denied the request for continuance and proceeded with the hearing. Resp. Mem., Exh. B at 2–3; Resp. Repl., Exh. A, Transcript of May 10 Hearing at 7. Petitioner refused to participate in the hearing and stood mute. Resp. Mem., Exh. B, Oral Decision of the Immigration Judge at 3; Resp. Repl., Exh. A, Transcript of May 10 Hearing at 8–10, 13.

The immigration judge found petitioner deportable because he had been convicted of conspiracy to possess with intent to distribute heroin. Resp. Mem., Exh. B at 3; Resp. Repl., Exh. A, Transcript of May 10 Hearing at 12. The immigration judge also concluded that petitioner was not eligible for a waiver of deportability under former Section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c), because it had been repealed. Resp. Mem., Exh. B, Oral Decision of the Immigration Judge at 4 ("[A]lthough the respondent may have been eligible for [Section] 212(c) relief at the outset of April, [after April 24, 1996] individuals who have been convicted of drug offenses are no longer

eligible for [Section] 212(c) relief."). Petitioner appealed the deportation finding to the Bureau of Immigration Appeals, which affirmed the immigration judge's decision on January 22, 1997. Resp. Mem., Exh. F, Opinion of the Board of Immigration Appeals.

## II. ANALYSIS

### A. The New Laws

On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996). Sections 401(e) and (f) of the AEDPA repealed Section 106(a)(10) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1105a(a)(10), which had provided that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by *habeas corpus* proceedings." Section 440(a) of the AEDPA created a new INA Section 106(a)(10) which reads as follows:

(a) JUDICIAL REVIEW—Section 106 of the Immigration and Nationality Act (8 U.S.C. § 1105a(a)(10)) is amended to read as follows: "(10) Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i), shall not be subject to review by any court."

Petitioner was convicted of an offense under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, which rendered him deportable under INA Section 241(a)(2)(A)(iii) as an alien convicted of an aggravated offense and thus, according to respondents, not entitled to judicial review of his deportation order. Resp. Mem., Exh. A, Order to Show Cause and Notice of Hearing.

---

1. The President signed new immigration legislation on April 24, 1996, thirteen days after petitioner's bond hearing but before the immigration judge's decision. In his May 1, 1996 decision, the immigration judge concluded that by virtue of the new legislation petitioner, having been convicted of a federal narcotics offense, was "no longer eligible for relief" under Section 212(c) of the Immigration and Nationality Act which was amended by the new legislation. Resp. Mem., Exh. D, at 4. Old Section 212(c) had authorized the Attorney General to grant discretionary relief from deportation for aliens lawfully admitted to the United States for permanent residence. 8 U.S.C. § 1182(c) (1994).

On September 30, 1996, President Clinton signed into law the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996), which further amended the INA. Section 306(b) of the IIRIRA repealed INA Section 106 in its entirety, but Section 306(a)(2) carried through the judicial review bar of Section 440(a) of the AEDPA. Section 306(a) of the IIRIRA revised INA Section 242 to provide as follows:

(a)(1) GENERAL ORDERS OF REMOVAL—Judicial review of a final order of removal ... is governed only by [28 U.S.C. § 2341 *et seq.*],[2] except as provided in subsection (b) and except that the court may not order the taking of additional evidence under section 2347(c) of such title.

(a)(2)(C) ORDERS AGAINST CRIMINAL ALIENS—Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 212(a)(2) or 237(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 237(a)(2)(A)(ii) for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 237(a)(2)(A)(i)....[3]

(g) EXCLUSIVE JURISDICTION— Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

Again, because petitioner was convicted of an offense under the Controlled Substances Act he was rendered deportable under new INA Section 237 and thus, according to respondents, not entitled to judicial review of his deportation order because of revised INA Section 242. New Section 242 purports to apply to all "claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under such Act." IIRIRA § 306(c)(1), amending 8 U.S.C. § 1252.

## B. Does Traditional Habeas Corpus Jurisdiction in Immigration Cases Survive the New Laws?

The general *habeas corpus* statute, 28 U.S.C. § 2241, provides that any person detained unlawfully may seek a writ of *habeas corpus* in the United States district courts if, *inter alia,* "(1) [h]e is in custody under or by color of the authority of the United States ...; or (2)[h]e is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or (3)[h]e is in custody in violation of the Constitution or laws or treaties of the United States...." 28 U.S.C. § 2241(c). The Supreme Court has held that *habeas corpus* is available to challenge deportation orders, *Heikkila v. Barber,* 345 U.S. 229, 235, 73 S.Ct. 603, 606, 97 L.Ed. 972 (1953), and a number of courts of appeals have concluded that challenges to deportation proceedings and immigration detainers are cognizable under the *habeas corpus* statute, 28 U.S.C. § 2241. *See, e.g., Galaviz–Medina v. Wooten,* 27 F.3d 487, 492 (10th Cir.1994), *cert. denied,* 513 U.S. 1086, 115 S.Ct. 741, 130 L.Ed.2d 643 (1995); *Orozco v. INS,* 911 F.2d 539, 541 (11th Cir.1990); *Williams v. INS,* 795 F.2d 738, 745 (9th Cir.1986); *United States ex rel. Marcello v. District Director,* 634 F.2d 964, 967 (5th Cir.), *cert. denied,* 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 421 (1981).

Prior to the 1996 legislative changes to the immigration laws, the INA itself also provided a *habeas corpus* remedy for individuals in custody under orders of deportation. Old Section 106(a)(10) of the INA, 8 U.S.C. § 1105a(a)(10), had provided that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by *habeas corpus* proceedings" in the United States district courts. This section was

---

2. 28 U.S.C. § 2341 *et seq.* grants exclusive jurisdiction for judicial review of certain federal agency orders to the United States courts of appeals.

3. Section 241 (deportable offenses) of the INA was redesignated as Section 237 by the 1996 Illegal Immigration Reform and Immigrant Responsibility Act.

among a list of exceptions to the jurisdictional provision of Section 106(a) that granted the circuit courts "sole and exclusive" authority to review final orders of deportation. 8 U.S.C. § 1105a(a). As noted above, however, Section 401(e) of the AEDPA repealed Section 106(a)(10). Respondents argue that this Court lacks jurisdiction because (1) Section 401(e) of the AEDPA "expressly repealed," by striking, section 106(a)(10) of the INA which had allowed *habeas corpus* review of deportation orders in the United States district courts; (2) Section 306(a)(2) of the IIRIRA revised Section 242(g) of the INA to deprive all courts of jurisdiction over deportation decisions and thus implicitly repealed any *habeas corpus* jurisdiction that the district courts had over deportation orders under 28 U.S.C. § 2241;[4] and (3) if there is no jurisdiction in the district courts to review deportation orders there would be no jurisdiction to grant stays of such orders. Resp. Mem. at 24–28.

Petitioner argues that the 1996 amendments to the AEDPA and the IIRIRA did not clearly and explicitly eliminate *habeas corpus* jurisdiction under 28 U.S.C. § 2241, that a congressional intent to eliminate or limit such jurisdiction must be clear and explicit, and that the elimination of *habeas corpus* jurisdiction would be an unconstitutional suspension of the writ of *habeas corpus*. Petitioner's Memorandum of Law in Opposition to Respondents' Motion to Dismiss for Lack of Jurisdiction ("Pet. Mem.") at 12–18.[5] In addition, petitioner notes that while the 1996 amendments "repealed certain federal court jurisdiction previously set forth in the INA under former section 106[,][t]he inquiry does not end there, however, since Ozoanya did not bring his claim under section 106 of the Act; he proceeded by petition for a writ of *habeas corpus* under 28 U.S.C. § 2241." Pet. Mem. at 12.

 Both petitioner and respondents acknowledge that despite the sweeping language of Section 440(a) of the AEDPA and Section 306 of the IIRIRA, claims alleging "substantial" constitutional violations in deportation proceedings are still subject to judicial consideration. That acknowledgment is necessary because "[a] statute that removes jurisdiction from all courts to vindicate *constitutional* rights [would] pose[ ] serious constitutional objections." *Ramallo v. Reno*, 114 F.3d 1210, 1214 (D.C.Cir.1997); *see id.* at 1214 n. 1. Respondents assert, however, that such claims are reviewable only by the courts that have authority to hear appeals from final deportation orders in the first place—the courts of appeals—under INA Section 242 and IIRIRA Sections 306(a)(2) and 309(c)(4)(G).[6] According to respondents, the 1996 amendments to the INA preclude petitioner from obtaining *habeas corpus* review of his deportation proceedings in this or any other district court under any circumstances, while petitioner maintains that the traditional *habeas corpus* jurisdiction of the district courts provided by 28 U.S.C. § 2241 continues to exist.[7]

By their terms, of course, both Section 440(a) of the AEDPA and Section 306(a)(2) of the IIRIRA bar review "by any court" of a final deportation order against an alien who has been found deportable because of his conviction of certain enumerated crimes, including a conviction under the Controlled

---

**4.** As noted, Section 306 of the IIRIRA revised Section 242(g) of the INA to provide "[e]xcept as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act." 8 U.S.C. § 1252(g).

**5.** The United States Constitution prohibits the suspension of the writ of *habeas corpus* except "when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., Art. I, § 9, cl. 2.

**6.** "[T]here shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section ... 241(a)(2)(A)(iii)...." IIRIRA § 309(c)(4)(G) (transitional rules).

**7.** Because petitioner has the opportunity to "demonstrate claims of Constitutional error" before the United States Court of Appeals for the Fifth Circuit, respondents also assert that the new limitations on judicial review of deportation orders do not violate the Suspension Clause. Resp. Repl. at 12–14.

**6**

Substances Act. Nothing in those sections suggests that a court of appeals would have jurisdiction to entertain claims made by someone in petitioner's shoes—even for constitutional claims—any more than would a district court. At least nine circuit courts have determined that AEDPA Section 440(a) or Section 306 of the IIRIRA have eliminated their jurisdiction to review final deportation orders of persons convicted of aggravated felonies.[8] The Court of Appeals for this Circuit has not yet addressed the aggravated felon issue but also recently decided that Section 306(a)(2)(g) eliminated its jurisdiction to review final deportation orders. *Ramallo v. Reno*, 114 F.3d at 1211–12. Neither the D.C. Circuit nor any of the other courts of appeals has expressly decided the specific question of whether *habeas corpus* jurisdiction in the district courts under Section 2241 survives the AEDPA and the IIRIRA.

The federal courts have had the statutory authority to grant writs of *habeas corpus* since enactment of the Judiciary Act of 1789. The Supreme Court has recognized that "the power to award the writ by any of the courts of the United States must be given by written law," *Felker v. Turpin*, —— U.S. ——, ——, 116 S.Ct. 2333, 2340, 135 L.Ed.2d 827 (1996) (*quoting Ex parte Bollman*, 4 Cranch 75, 94, 2 L.Ed. 554, (1807)), and that "repeals [of *habeas corpus* jurisdiction] by implication are not favored . . . ." *Id.* at ——, 116 S.Ct. at 2338. It has also recognized the power of Congress to define the "proper scope of the writ." *Id.* at ——, 116 S.Ct. at 2340 (*citing Lonchar v. Thomas*, —— U.S. ——, ——, 116 S.Ct. 1293, 1298, 134 L.Ed.2d 440 (1996)). When recently considering a series of challenges to the AEDPA, the Court noted that Section 103 of the AEDPA by amending the Federal Rules of Appellate Procedure had specifically, clearly and affirmatively eliminated the jurisdiction of the courts of appeals to consider original *habeas corpus* petitions. By contrast, Congress in passing the AEDPA "makes no mention of our [the Supreme

Court's] authority to hear *habeas* petitions filed as original matters in this Court." *Felker v. Turpin*, —— U.S. at ——, 116 S.Ct. at 2339. Therefore, just as the Supreme Court in 1869 declined to find a repeal of Section 14 of the Judiciary Act of 1789, the predecessor to 28 U.S.C. § 2241, "by implication" through the Judiciary Act of 1867, *see Ex parte Yerger*, 8 Wall. 85, 19 L.Ed. 332 (1868), in *Felker* the Court declined to find a repeal of Section 2241 as applied to the Supreme Court "by implication now." *Felker v. Turpin*, —— U.S. at ——, 116 S.Ct. at 2339.

It follows from *Felker* that if Congress had intended to eliminate the district courts' jurisdiction under 28 U.S.C. § 2241 to consider *habeas corpus* petitions filed by a certain class of persons in custody, it would have had to do so affirmatively and clearly. There is nothing in the language of either the AEDPA or the IIRIRA to suggest that Congress expressly repealed Section 2241, limited its scope or eliminated the jurisdiction of the district courts under that statute to consider petitions for writs of *habeas corpus.* Assuming that Congress intended to and did eliminate the specific *habeas corpus* provisions previously contained in the INA through enactment of Section 440 of the AEDPA and Section 306 of the IIRIRA, this Court concludes that the vague and uncertain language of Section 306(a)(2) of the IIRIRA ("except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear . . .") does not eliminate the recognized jurisdiction of the district courts under 28 U.S.C. § 2241 to hear the *habeas corpus* claims of any person in custody, including deportable aliens. *See Felker v. Turpin*, —— U.S. at —— – ——, 116 S.Ct. at 2339–40.

█ The language of the AEDPA and the IIRIRA is "at best ambiguous;" it "[does] not state that they repeal or amend section 2241; indeed, they do not mention section

**8.** *See Kolster v. INS*, 101 F.3d 785 (1st Cir.1996); *Hincapie–Nieto v. INS*, 92 F.3d 27 (2d Cir.1996); *Salazar–Haro v. INS*, 95 F.3d 309 (3d Cir.1996); *Mendez–Rosas v. INS*, 87 F.3d 672 (5th Cir.1996); *Qasguargis v. INS*, 91 F.3d 788 (6th Cir.1996); *Yang v. INS*, 109 F.3d 1185 (7th Cir.1997); *Duldulao v. INS*, 90 F.3d 396 (9th Cir.1996); *Berehe*

*v. INS*, 114 F.3d 159 (10th Cir.1997); *Boston–Bollers v. INS*, 106 F.3d 352 (11th Cir.1997). The Seventh Circuit in *Yang* concluded, however, that the courts of appeals retain jurisdiction to entertain constitutional or "substantial" constitutional claims. *See Yang v. INS*, 109 F.3d at 1196.

2241 at all." *Yesil v. Reno,* 958 F.Supp. 828, 838 (S.D.N.Y.1997). Furthermore, as already noted, limiting the availability of *habeas corpus* may not be done by implication, *Felker v. Turpin,* —— U.S. at ——–——, 116 S.Ct. at 2337–38; *Eltayeb v. Ingham,* 950 F.Supp. 95, 98–99 (S.D.N.Y.1997), and "the plain language [of the 1996 amendments] does not expressly repeal section 2241." *Yesil v. Reno,* 958 F.Supp. at 838. Finally, Congress cannot entirely eliminate all *habeas corpus* review of deportation orders unless it provides some alternative avenue for review. *Yesil v. Reno,* 958 F.Supp. at 838. To accept respondents' assertion that *habeas corpus* is no longer available in the district courts and that judicial review of deportation orders is largely unavailable in the courts of appeals, at least for those who have been convicted of certain felonies, "would raise serious questions concerning the Constitution's Suspension Clause." *Eltayeb v. Ingham,* 950 F.Supp. at 98; *see also Ramallo v. Reno,* 114 F.3d at 1213–14.

▮ Because the IIRIRA has now eliminated the jurisdiction of the courts of appeals to hear petitions for review brought by aliens convicted of aggravated felonies, 28 U.S.C. § 2241 must be interpreted to permit *habeas corpus* in the district courts to review deportation orders of those convicted of such felonies. *Yesil v. Reno,* 958 F.Supp. at 839; *Eltayeb v. Ingham,* 950 F.Supp. at 98. *See also Powell v. Jennifer,* 937 F.Supp. 1245, 1252–53 (E.D.Mich.1996); *Mbiya v. INS,* 930 F.Supp. 609, 611 (N.D.Ga.1996). In sum, this Court concludes that the district courts' jurisdiction to hear claims brought by deportable aliens under 28 U.S.C. § 2241 survives the 1996 amendments to the INA.

### C. What Claims May Be Raised And Where?

▮ Having determined that the AEDPA and the IIRIRA do not divest the district courts of subject matter jurisdiction because the traditional remedy of *habeas corpus* relief provided by 28 U.S.C. § 2241 survives

the enactment of those statutes, the question remains what, if any, limitations has Congress placed on the scope of *habeas corpus* review of deportation orders in the district courts. The Court need not decide this issue in this case, however, because, as our court of appeals has just concluded, *habeas corpus* review remains available to an alien subject to a deportation order so long as the alien's *habeas corpus* petition raises "substantial constitutional questions." *Ramallo v. Reno,* 114 F.3d at 1214. Because petitioner has raised a number of constitutional claims, the writ of *habeas corpus* remains available to him. *Id.* at 1213–14; *cf. Yang v. INS,* 109 F.3d at 1196.[9]

In his amended petition, petitioner raises due process and equal protection claims. He claims that the denial of the opportunity for relief under former Section 212(c) of the INA based on the enactment of Section 440(d) of the AEDPA violated the Fifth Amendment because he had completed his sentence before the AEDPA's effective date and therefore the new legislation should not have been applied retroactively to him. Petitioner's Motion to Stay Deportation, Attachment, Amendment to the Writ of *Habeas Corpus* with a Request to Stay Deportation at 2–6. Petitioner also raises equal protection considerations, asserting that under the AEDPA lawful permanent residents in the United States could be barred from seeking discretionary relief from deportation under Section 212(c) of the INA, while those who are abroad and wish to return to the United States would not be barred from such relief. Pet. Mem. at 22. He also raises the very substantial issue of whether due process requires notice to an alien of the right to appeal a deportation order. *Id.* Finally, petitioner maintains that he was improperly denied counsel during his deportation proceedings, a claim that clearly is substantial. *See Landon v. Plasencia,* 459 U.S. 21, 32–33, 103 S.Ct. 321, 329–30, 74 L.Ed.2d 21 (1982) (and cases cited therein); *Yang v. INS,* 109 F.3d at 1196 ("A [lawful] alien [facing deportation] is entitled to notice of the charges, to present

---

9. At one point in their papers, respondents suggest that a "colorable" constitutional claim may suffice, and our court of appeals in *Ramallo* was not entirely clear that the constitutional claims raised must be "substantial" on their face for there to be *habeas* jurisdiction. *See Ramallo v. Reno,* 114 F.3d at 1213–14 and n. 1.

evidence (and confront adverse evidence), with the assistance of counsel, at an evidentiary hearing before an immigration judge, and to appellate review.").

At the May 10, 1996 deportation hearing, petitioner unsuccessfully sought a continuance to retain counsel to assist him. The immigration judge denied petitioner's request for a continuance because petitioner had appeared four previous times and on each occasion had been granted a continuance to secure counsel. Petitioner stood mute during the proceeding. Resp. Mem., Exh. B, Oral Decision of the Immigration Judge at 3; Resp. Repl., Exh. A, Transcript of May 10 Hearing at 8–10, 13. The record reveals petitioner's persistent requests for counsel. While clearly there are limits as to how long one can delay a proceeding and for what reasons, it appears that petitioner has presented a cognizable claim of a denial of his right to counsel that is properly the subject of a petition for a writ of *habeas corpus* and should be addressed on its merits by a United States district court. *See United States v. Torres–Sanchez,* 68 F.3d 227, 230 (8th Cir.1995) (while there is no Sixth Amendment right to counsel in deportation proceedings, "in some circumstances, depriving an alien of the right to counsel may rise to a due process violation."); *Motta v. District Director,* 869 F.Supp. 80, 90–91 (D.Mass.1994), *vacated on mootness grounds,* 61 F.3d 117 (1st Cir.1995) (ineffective assistance of counsel at deportation proceedings could amount to a violation of the Fifth Amendment's due process clause).

■ This Court nonetheless concludes that it must transfer the case to another district because this Court lacks personal jurisdiction over petitioner's custodian. Like all *habeas corpus* petitions, this action is subject to the jurisdictional and statutory limitations on petitions for writs of *habeas corpus. Preiser v. Rodriguez,* 411 U.S. 475, 478, 93 S.Ct. 1827, 1830, 36 L.Ed.2d 439 (1973); *Chatman–Bey v. Thornburgh,* 864 F.2d 804, 809 (D.C.Cir.1988). And it is established that writs of *habeas corpus* must be

directed to the custodian of the detainee, in this case, the INS district director at Oakdale, Louisiana. *See Guerra v. Meese,* 786 F.2d 414, 416 (D.C.Cir.1986) (rejecting argument that Parole Commission, while responsible for appellees' continued detention, was their custodian for purposes of *habeas corpus* ); *Connally v. Reno,* 896 F.Supp. 32, 34 (D.D.C.1995) (rejecting *habeas corpus* action brought against Attorney General and Director of Bureau of Prisons rather than petitioner's warden) (*quoting Ledher v. Thornburgh,* 733 F.Supp. 454–55 (D.D.C.1990) ("The custodian is the person having day-to-day control over the prisoner.")). Because this Court lacks jurisdiction over the INS district director, the Court will transfer this case to the United States District Court for the Western District of Louisiana. 28 U.S.C. § 1406(a); *see Michael v. INS,* 870 F.Supp. 44, 46–47 (S.D.N.Y.1994).

■ Petitioner has also moved for a stay of deportation pending a resolution of this *habeas corpus* action as well as an action pending in the Seventh Circuit. This Court obviously lacks jurisdiction to issue an order respecting the Seventh Circuit case. With respect to the instant case, however, it seems clear that to allow petitioner to be deported before final resolution of this action would effectively nullify this Court's ruling that there is *habeas corpus* jurisdiction to consider petitioner's claims in the United States District Court for the Western District of Louisiana. The Court's interest in protecting the integrity of the judicial process warrants a continuing stay of petitioner's deportation until final resolution of this action by the transferee court.

An Order consistent with this Opinion shall be issued this same day.[10]

SO ORDERED.

### ORDER

Upon consideration of petitioner's amended application for a writ of *habeas corpus* and request to stay deportation, respondents' motion to dismiss and petitioner's reply, and

---

10. The Court expresses its appreciation to Robert E. Juceam and Kimberly Kolch for agreeing on short notice to represent petitioner in this matter *pro bono publico* and for having done so in such a professional and effective manner.

for the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that Petitioner's application for a writ of *habeas corpus* is TRANS-FERRED to the United States District Court for the Western District of Louisiana; it is

FURTHER ORDERED that petitioner's deportation is hereby STAYED pending the final outcome of this matter in that court; and it is

FURTHER ORDERED that this case is removed from the Docket of this Court.

SO ORDERED.